## S03A0127. HUGHES v. HALL.
### (578 SE2d 888)

HUNSTEIN, Justice.

Appellant Raymond Hughes filed a petition for habeas corpus challenging his conviction of seven counts of aggravated assault and two counts of interfering with government property after he entered pleas of guilty but mentally ill. In his only enumeration of error, he contended that the trial court lacked jurisdiction to accept his guilty pleas while the issue of his competency to stand trial was pending before a special jury. Because we find that the trial court determined that Hughes was competent to stand trial and freely and voluntarily entered his pleas of guilty but mentally ill, we affirm the habeas court's denial of Hughes' petition.

Hughes was charged in a 14 count indictment with numerous crimes following a stand-off with police. Hughes, who has a history of substance abuse and depression, moved for and was granted an independent psychiatric examination pursuant to OCGA § 17-7-130. A special jury was impaneled to decide the issue of Hughes' competency to stand trial. After a full trial during which both parties presented evidence, including the reports of two psychiatric experts, and while the jury was still deliberating, Hughes informed the court he had reached an agreement with the State in which he would plead "guilty but mentally ill" to nine of the fourteen counts. Hughes was then placed under oath and thoroughly questioned concerning the pleas. Finding that Hughes' pleas were knowingly and voluntarily entered, the trial court accepted the pleas. Hughes subsequently filed a petition for habeas corpus arguing that the trial court lacked jurisdiction to accept his guilty pleas before the matter of his competency was

resolved. After conducting an evidentiary hearing, the habeas court denied relief and we granted Hughes' certificate of probable cause to appeal.

Under Georgia law, when a defendant files a plea of mental incompetency to stand trial "it shall be the duty of the court to cause the issue of the defendant's mental competency to stand trial to be tried first by a special jury." OCGA § 17-7-130 (a). A hearing on the issue of a defendant's mental competency may, by agreement of the parties, be conducted before a judge sitting without a jury. *Campbell v. State*, 240 Ga. 352 (3) (240 SE2d 828) (1977). Such a hearing " 'secures to a person charged with a crime the right to have the question of his mental condition at the time of the trial inquired into before being required to plead to the indictment. (Cit.)' [Cit.]" *Martin v. State*, 147 Ga. App. 173 (2) (248 SE2d 235) (1978).

In this case, Hughes filed a plea of mental incompetency and a special jury was impaneled. During the special trial both parties presented evidence on the issue of Hughes' mental competence to stand trial and the jury began its deliberations. While the special jury was in recess, Hughes and his counsel approached the court to enter pleas of "guilty but mentally ill" pursuant to a negotiated agreement with the State. Although in accepting Hughes' pleas the trial judge did not make an explicit determination that Hughes was competent, the trial judge swore Hughes in and conducted a thorough colloquy during which she inquired into Hughes' competency. The judge carefully questioned Hughes about the medications he was taking and discussed at length Hughes' mental condition. Indeed, in response to certain of the court's questions Hughes' attorney stated to the court that Hughes fully understood the charges against him and the consequences of his pleas and "according to the psychiatrist and the examinations he's legally competent to stand trial." The trial court also informed Hughes of his rights, including his right to a jury determination of his competency, and that if the jury found him incompetent, he would not be forced to stand trial. The trial court ultimately found beyond a reasonable doubt that Hughes understood the nature of the charges against him, that the pleas were made freely, voluntarily, and knowingly, and that Hughes fully understood his rights and understood both the consequences of waiving his rights and the consequences of his pleas.

After reviewing the proceedings during Hughes' special trial and plea hearing, we conclude the trial court made a sub silentio determination that Hughes was competent to stand trial and was authorized to accept Hughes' pleas of guilty but mentally ill. See *Harris v. State*, 256 Ga. 350 (2) (349 SE2d 374) (1986) (fact that court allowed trial to go forward after testimony concerning defendant's competency is "sub silentio" finding that defendant was competent). Although the

better course of action would have been for the trial court to make an explicit finding of competency to stand trial or for Hughes to have withdrawn his plea of mental incompetency, such specific findings are not legally required as long as some determination was made on the issue of Hughes' competence. See id. Hughes' reliance on *Martin*, supra, for a contrary result is misplaced. In *Martin*, the Court of Appeals reversed the trial court's acceptance of a guilty plea because the defendant's special plea of insanity had not yet been tried either by a judge or special jury. In contrast, Hughes was granted a special jury trial on competency, the sufficiency of which he does not challenge, and the trial court accepted Hughes' guilty pleas only after determining that Hughes was competent to stand trial. Accordingly, we affirm the habeas court's order denying Hughes' petition for habeas corpus.

*Judgment affirmed. All the Justices concur.*

DECIDED MARCH 27, 2003.

*Marcus C. Chamblee, Stephen D. Pereira,* for appellant.

*Thurbert E. Baker, Attorney General, Ruth M. Pawlak, Assistant Attorney General,* for appellee.